# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CHARLENE M. WEINBERG,       )
                                       )
            Plaintiff,       )     Civil Action No. 2:12-cv-01017
     v.                      )
                                       )     Judge Mark R. Hornak
CAROLYN W. COLVIN,[1] *Acting*    )
*Commissioner of Social Security*,    )
                                       )
            Defendant.    )
                                       )

## MEMORANDUM OPINION

**Mark R. Hornak, United States District Judge**

Plaintiff Charlene Weinberg brings this action pursuant to 42 U.S.C. § 405(g) and § 1393(c)(3) , seeking review of the final determination of the Commissioner of Social Security ("Defendant" or "Commissioner") denying her application for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381 – 1383f ("Act").  This matter comes before the Court upon cross-motions for judgment on the pleadings and summary judgment.  ECF Nos. 10, 13.  The record has been developed at the administrative level.  For the following reasons, Plaintiff's Motion for Judgment on the Pleadings, ECF No. 10, will be granted in part and denied in part, and Defendant's Motion for Summary Judgment, ECF No. 13, will be denied.

## I.   PROCEDURAL HISTORY

Plaintiff filed for DIB and SSI on April 2, 2009.  R. 15.  Plaintiff was initially denied benefits on October 1, 2009. *Id.*  A hearing was held on January 18, 2011 before Administrative

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013, succeeding former Commissioner Michael J. Astrue. Social Security History–Social Security Commissioners, http://www.ssa.gov/history/commissioners.html (visited on July 15, 2013). Consequently, Acting Commissioner Colvin is now the official-capacity defendant in this action. *Hafer v. Melo*, 502 U.S. 21, 25 (1991); Fed. R. Civ. P. 25(d).

Law Judge Douglas Cohen ("ALJ"). *Id.* Plaintiff appeared to testify and was represented by counsel. *Id.* William H. Reid, Ph. D., an impartial vocational expert ("VE"), along with Plaintiff's husband, Robert Weinberg, also testified at the hearing. *Id.*

On February 28, 2011, the ALJ rendered an unfavorable decision to Plaintiff. He found that Plaintiff suffered from severe impairments including migraine headaches, chronic ankle pain, back disorder with neuropathy, asthma, mood disorder, and generalized anxiety disorder since August 18, 2007. R. 17, 28. He determined that (1) Plaintiff's impairments did not meet or equal one of the listed impairments as defined in 20 C.F.R. Pt. 404, Subpt. P, App. 1, and (2) while Plaintiff did not have the residual functional capacity ("RFC") to return to her previous relevant work, she retained the ability to perform light exertional or sedentary exertional work (with certain limitations due to her physical and mental abilities), as a photocopy machine operator, packer, grader/sorter, surveillance system monitor, or assembler, and therefore was not "disabled" within the meaning of the Act. R. 20-25.

Plaintiff filed a request for review of the ALJ's decision by the Appeals Council, which request was denied on May 23, 2012, thereby making the decision of the ALJ the final decision of the Commissioner. R. 2. This appeal followed. Plaintiff asserts three challenges to the ALJ's decision: (1) the ALJ improperly weighed the medical opinion evidence in making his RFC assessment, and therefore it is not supported by substantial evidence; (2) the ALJ wrongly found Plaintiff to be not credible; (3) in light of the foregoing, the hypothetical questions offered to the VE were incomplete; and (4) the ALJ did not sufficiently identify/address discrepancies between the VE's testimony and the Dictionary of Occupational Titles (DOT) pertaining to the jobs identified by the VE. Plaintiff requests that the decision of the ALJ be reversed and that she be

awarded DIB and SSI benefits or, in the alternative, that the case be remanded to the Commissioner. Pl's Br. at 20, ECF No. 11.

## II.   STANDARD OF REVIEW

This Court's review is plenary with respect to all questions of law. *Schandeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999). With respect to factual issues, judicial review is limited to determining whether the Commissioner's decision is "supported by substantial evidence." 42 U.S.C. § 405(g); *Adorno v. Shalala*, 40 F. 3d 43, 46 (3d Cir. 1994). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotation marks omitted). As long as the Commissioner's decision is supported by substantial evidence, it cannot be set aside even if this Court "would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F. 3d 358, 360 (3d Cir. 1999).

In order to establish a disability under the Act, a claimant must demonstrate a "medically determinable basis for an impairment that prevents [her] from engaging in any 'substantial gainful activity' for a statutory twelve-month period." *Stunkard v. Sec'y of Health & Human Serv.*, 841 F. 2d 57, 59 (3d Cir. 1988); *Kangas v. Bowen*, 823 F. 2d 775, 777 (3d Cir. 1987); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is considered to be unable to engage in substantial gainful activity "only if [her] physical or mental impairment or impairments are of such severity that he [or she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To support his or her ultimate findings, an administrative law judge must do more than simply state factual conclusions. He or she must make specific findings of fact. *Stewart v.Sec'y of Health, Educ. & Welfare*, 714 F. 2d 287, 290 (3d Cir. 1983). The administrative law judge must consider all medical evidence contained in the record and provide adequate explanations for disregarding or rejecting evidence. *Weir on Behalf of Weir v. Heckler*, 734 F. 2d 955, 961 (3d Cir. 1984); *Cotter v. Harris*, 642 F. 2d 700, 705 (3d Cir. 1981).

The Social Security Administration ("SSA"), has promulgated a familiar five-step sequential evaluation process for determining whether a claimant is "disabled" within the meaning of the Act. The United States Supreme Court summarized this process as follows:

> If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further. At the first step, the agency will find non-disability unless the claimant shows that [s]he is not working at a "substantial gainful activity."[20 C.F.R.] §§ 404.1520(b), 416.920(b). At step two, the SSA will find nondisability unless the claimant shows that [s]he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [her] physical or mental ability to do basic work activities." §§ 404.1520(c), 416.920(c). At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. §§ 404.1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless [s]he shows that [s]he cannot, [s] he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. §§ 404.1520(f), 404.1560(c), 416.920(f), 416.960(c).

*Barnhart v. Thomas*, 540 U.S. 20, 24–25 (2003) (footnotes omitted).

## III. DISCUSSION

### A. Plaintiff's Residual Functional Capacity (RFC)

Plaintiff's primary argument is that the ALJ erred in his RFC assessment when he credited the opinion of Phyllis Brentzel, Psy. D., a non-examining state agency review physician,

4

over those of both Jamie Probst, M.D., Plaintiff's treating physician, and Charles Kennedy, Ph. D., a consultative examiner. Pl.'s Br. at 13, ECF No. 11.

Dr. Probst had treated Ms. Weinberg since December 2008 and continuously through the date of the hearing in early 2011. The record reflects some ten office visits in that time period, each accompanied by Dr. Probst's notes and diagnoses. R. 205-12; 520-21; 305-10; 497-516. Throughout that time period, Dr. Probst diagnosed and treated Ms. Weinberg for bipolar disorder, anxiety, migraine[s], spinal stenosis, back pain, asthma/chronic obstructive pulmonary disease, ongoing tobacco use, chronicle ankle problems, and joint complaints. *See, e.g.*, R. 497 (Nov. 12, 2010 visit). In particular, Dr. Probst was prescribing Ms. Weinberg on Depakote for her anxiety and mood and Neurontin for her pain, and closely monitored their effects on her.

On October 12, 2009, Dr. Probst completed a "Medical Statement Regarding Social Security," in which she listed as "Diagnoses" for Plaintiff "Bipolar D/O, Degenerative Disc Disease, Migraine Headaches, PTSD," and as "Treatment" "Neurontin, Depakote, Ibuprofen." R. 343. She listed Plaintiff's work capacity as "None." *Id.* Most importantly, Dr. Probst described Plaintiff's pain as "severe," that she suffered from "chronic pain syndrome," and therefore suffered a "*marked* restriction in activities of daily living," "*marked* difficulty in maintaining social functioning," and "deficiencies of concentration, persistence or pace resulting in frequent failure to complete tasks in a timely manner." R. 346 (emphasis added). Dr. Probst also listed under "other limitations that would affect the claimant's ability to work on a full time basis "Bipolar Disorder, PTSD, severe migraines." R. 344.

On September 22, 2009, consultative examiner Charles Kennedy completed an evaluation of Ms. Weinberg's mental health based on his own examination of her. He found *slight* impairments in her ability to understand and remember short, simple instructions; carry out short,

simple instructions; and make judgments on simple work-related decisions. R. 316. He found *moderate* impairments in her ability to understand, remember, and carry out detailed instructions. *Id.* He found *marked* impairments in the area of social interaction, particularly Plaintiff's ability to interact appropriately with the public, supervisors, and coworkers; respond appropriately to work pressures in a usual work setting; and respond appropriately to changes in a routine work setting. *Id.* In his notes, he described that Plaintiff "demonstrated clear hypomanic symptoms," and stated that he "would suggest a payee be considered given [Plaintiff's] tendency to be scattered and hypomanic." R. 322.

In contrast to Drs. Probst and Kennedy, the non-examining state agency review physician Dr. Brentzel concluded in her Mental RFC Assessment that Plaintiff was only *moderately* limited and *not significantly* limited in areas of social interaction. R. 326. Dr. Brentzel rejected Dr. Kennedy's opinion to the extent that it found Ms. Weinberg was unable to make performance, personal, and social adjustments because they were "not consistent with all of the medical and non-medical evidence in the claims folder." R. 327. According to Dr. Brentzel, Dr. Kennedy's report "reveals only a snapshot of the claimant's functioning and is an overestimate of the severity of her limitations." *Id.* Therefore, Dr. Brentzel concluded that Ms. Weinberg was "able to meet the basic mental demands of competitive work on a sustained basis despite" her limitations. R. 328.

The ALJ concluded that:

claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that she is limited to occasional climbing of ramps and stairs only (i.e., NO climbing of ladders, ropes, or scaffolds); occasional balancing, stooping, crouching, crawling, or kneeling; must avoid concentrated exposure to dust, fumes, odors, gases, environments with poor ventilation, wetness, humidity, and temperature extremes; limited to simple, routine, repetitive tasks; not performed in a fast-paced production environment; involving only simple, work-related decisions; and in general, relatively few work

6

pace changes; limited to occupations not involving high levels of stress, i.e., those requiring independent decision making, or occupations subject to close supervision or close interaction with coworkers, or the general public; and limited to occupations requiring no more than the most basic reading and writing and no more than simple addition and subtraction.

R. 20. In reaching that conclusion, the ALJ gave Dr. Brentzel's opinion "great weight," and found that Dr. Probst's opinion "cannot be credited" because it was "not supported by the evidence of record" and was "internally inconsistent with Dr. Probst's own treatment records." R. 23-24. The ALJ also rejected Dr. Kennedy's opinion because it was inconsistent with evidence of record and was "based on a one time examination" that relied "primarily on claimant's subjective reporting . . . and represent[s] only a snapshot of claimant's functional capacities. *Id.* The ALJ declared that the limitations identified by Ms. Weinberg's treating and examining sources were contradicted by the fact that she did not seek mental health treatment between 2007 and 2009, when she had medical health insurance; that she required no emergency department treatment for her mental health issues; and that Dr. Probst's records indicate that her condition is "stable" on medication. R. 23.

The Court agrees with Plaintiff that in accepting the opinion of the non-examining state agency review physician over the two examining sources, one of whom provided persistent and continuing treatment to Ms. Weinberg, the ALJ erred. In *Brownawell v. Commissioner of Social Security*, 554 F.3d 352, 357 (3d Cir. 2008), the Third Circuit held that the ALJ erred in accepting the opinion of a single non-examining psychologist who found that the plaintiff was not disabled over that of both the plaintiff's treating physician and the consultative examining psychologist. The court observed that an "[a]n ALJ should give 'treating physicians' reports great weight, especially when their opinions reflect expert judgment based on continuing observation of the patient's condition over a prolonged period of time,'" *id.* at 355 (quoting *Morales v. Apfel*, 225

F.3d 310, 317 (3d Cir. 2000)), and that it has "'consistently held that it is improper for an ALJ to credit the testimony of a consulting physician who has not examined the claimant when such testimony conflicts with testimony of the claimant's treating physician,'" *id.* at 357 (quoting *Dorf v. Bowen*, 794 F.2d 896, 901 (3d Cir. 1986)). This is especially so where "the opinions expressed by the treating sources were consistent with the report of a consultative examiner." *Hansford v. Astrue*, 805 F. Supp. 2d 140, 149-50 (W.D. Pa. 2011) (holding ALJ erred in relying on non-examining consultant who had discredited consultative examiner's evaluation as a "one-time snapshot"); *see also Schuelke v. Comm'r of Soc. Sec.*, CIV.A. 11-519, 2012 WL 1657530 (W.D. Pa. May 10, 2012) (same).

The Third Circuit also explained in *Morales* that "[t]he principle that an ALJ should not substitute his lay opinion for the medical opinion of experts is especially profound in a case involving a mental disability." 225 F.3d at 319. In particular, the court noted that was improper for the ALJ to find that the claimant was able to work just because his physician had noted he was "stable with medication," because "[f]or a person . . . who suffers from an affective or personality disorder marked by anxiety, the work environment is completely different from home or a mental health clinic." *Id*; *see also Brownawell*, 554 F.3d at 357 (citing *id.*).

Here, Dr. Probst found that based on a combination of Ms. Weinberg's pain and affective disorders, she would not be able to have the capacity to work. This was confirmed by Dr. Kennedy, who found "marked" restrictions in all of the categories of social functioning for the job. The ALJ improperly discredited his testimony based on his own lay opinions that Ms. Weinberg could work because her mental health condition was described as "stable," a rationale explicitly rejected by our Court of Appeals. The ALJ also incorrectly stated that Dr. Probst's opinions were not grounded in any objective evidence: Dr. Probst treated Ms. Weinberg over two

years, in which she observed her various symptoms, treated them with medication, and consistently described her as suffering from debilitating migraines and bipolar and anxiety disorders.

The ALJ also improperly injected his own assumptions about the severity of Plaintiff's illness based on her failure to seek mental health treatment. He observed that while Plaintiff asserted that she did not seek mental health treatment because she lost her insurance, there was a period of time between 2007 and 2009 where Plaintiff had insurance coverage, yet did not seek treatment. For one, the Third Circuit has "questioned the relevance of infrequent medical visits in determining when or whether a claimant is disabled," *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 547 (3d Cir. 2003). Other courts have found this to be especially so in the case of mental health treatment, especially where an individual is already receiving mental health medication from a family physician. *See Segal v. Barnhart*, 342 F. Supp. 2d 338, 342 (E.D. Pa. 2004). Dr. Probst's notes also note her intention to help Ms. Weinberg seek psychiatric treatment, noting concerns with Plaintiff's ability to pay for it given her lack of insurance and financial difficulties. R. 211, 497, 507. In sum, the fact that Ms. Weinberg did not seek independent psychiatric treatment prior to seeking treatment from Dr. Probst carries little, if no, weight in undermining her claims of the severity of her mental health issues.

The ALJ's reasoning regarding Plaintiff's failure to seek ER visits for mental health issues is also an improper lay opinion; he cites no medical opinion or evidence to support the proposition that an individual cannot be severely mentally impaired, yet never have resorted to ER treatment. Similarly flawed was his reasoning regarding Plaintiff's ability to assist in caring for her husband, finding it indicative of her ability to work. Like the ALJ in *Brownawell*, the ALJ here ignored the possibility that just because Ms. Weinberg could function reasonably well

around the home (a conclusion which is itself contradicted by Ms. Weinberg's testimony that she has increasing trouble doing simple tasks like baking), she would also have the sufficient mental ability to maintain steady employment. *See* 554 F.3d at 352; *Morales*, 225 F.3d at 319. Additionally, Dr. Brentzel's opinion itself also appears to contain similar errors in reasoning as the ALJ – like the ALJ, she discredited Dr. Probst and Dr. Kennedy's opinions on the amorphous ground that they were "inconsistent with the record as a whole." For these reasons, the ALJ improperly inserted his own lay opinion over that of the medical professionals.[2]

The result of these errors was that the ALJ's RFC did not accurately represent Ms. Weinberg's mental limitations. For example, his conclusions that Ms. Weinberg could perform certain jobs as long as they were limited, for example, to those "not involving high levels of stress . . . [or] close supervision or interaction with coworkers, or the general public," R. 20, were in contradiction to Drs. Probst and Kennedy, who both testified, for example, that Ms. Weinberg suffered *marked* difficulties in areas of social interactions.

> With respect to mental impairments, Social Security Ruling 85-15 provides:
>
> The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting. A substantial loss of ability to meet *any* of these basic work-related activities would severely limit the potential occupational base. This, in turn, would justify a finding of disability because even favorable age, education, or work experience will not offset such a severely limited occupational base.

Soc. Sec. Rul. 85-15, 1985 WL 56857 (1985) (emphasis added). The ALJ's RFC determination, therefore, was not supported by substantial evidence, in that it failed to account for the fact that

---

[2] Plaintiff also takes issue with the fact that the ALJ did not find her testimony to be credible, in particular as it related to the severity of her mental impairments. Pl.'s Mot, ECF No. 11, at 18; Pl.'s Reply, ECF No. 15, at 4-5. The Court agrees with Plaintiff on that count, for the same reasons as stated above. Merely because Plaintiff did not immediately seek mental health treatment while she was insured does not mean her allegations of a severe impairment cannot be credited; and merely because she assists in caring for her ailing husband does not mean that she is able to withstand the rigors of the workplace.

the seriousness of Mrs. Weinberg's mental limitations might limit her ability to engage in *any*

type of competitive, remunerative, unskilled work.

      B.      <u>Vocational Expert-Hypothetical Questions</u>

      The ALJ's questions to the VE were premised upon this erroneous RFC assessment. The

Third Circuit has explained that

> while the ALJ may proffer a variety of assumptions to the expert, the vocational
> expert's testimony concerning a claimant's ability to perform alternative
> employment may only be considered for purposes of determining disability if the
> question accurately portrays the claimant's individual physical and mental
> impairments. A hypothetical question posed to a vocational expert must reflect *all*
> of a claimant's impairments.

*Burns v. Barnhart*, 312 F.3d 113, 123 (3d Cir. 2002) (internal marks and quotations omitted).

The *Burns* court held that where the hypothetical questions "did not specifically convey [the

claimant's] intellectual limitations," they were deficient. *Id.*

      That standard is plainly met here. The ALJ's hypotheticals only referred to the mental

limitations listed in the RFC assessment, with the exception of also asking whether an individual

who was "off task" a certain percentage of the time during the day could work on a consistent

basis. R. 640-42. Like the RFC, the hypotheticals did not address the effect of any of Ms.

Weinberg's various mental limitations on her ability to work on a consistent basis, in particular

her "marked" limitations in the areas of social functioning. *Cf. Vucho v. Astrue*, CIV.A. 11-1248,

2012 WL 4482423, at *10 n.20 (W.D. Pa. Sept. 27, 2012) (VE was specifically asked and

testified that individual with marked social limitations would not be able to work). As in *Burns*,

"[b]ecause the ALJ based his finding, at step five of the evaluation process, that [Weinberg]

could perform a significant number of jobs in the national economy on this deficient hypothetical

question, [the Court] find[s] that it was not based on substantial evidence. 312 F.3d at 123; *see also Allen v. Barnhart*, 417 F.3d 396, 407 (3d Cir. 2005).[3]

The only remaining issue is whether the case should be remanded to the Commissioner or reversed with a direction to award benefits to Plaintiff. *Morales,* 225 F.3d at 320. "[T]he decision to . . . award benefits should be made only when the administrative record has been fully developed and when substantial evidence in the record as a whole indicates that the claimant is disabled and entitled to benefits." *Id.* (quoting *Podedworny v. Harris,* 745 F.2d 210, 222 (3d Cir. 1984)). Here, so that the Commissioner may determine whether Plaintiff is able to engage in any substantial gainful activity, in light of her mental limitations as recognized in the correctly weighted opinions rendered by the examining physicians, remand is the appropriate remedy. *See, e.g., Vucho,* 2012 WL 4882423, at *11; *Burns,* 312 F.3d at 124.

**IV.    CONCLUSION**

Based upon the foregoing, the Court finds that ALJ's decision is not supported by substantial evidence. Accordingly, Plaintiff's Defendant's Motion for Summary Judgment, ECF No. 10, will be DENIED. Plaintiff's Motion, ECF No. 13, will be GRANTED IN PART, to the extent that the Court remands the case to the Commissioner for reconsideration consistent with this Memorandum Opinion, and DENIED IN PART, to the extent that it seeks the directing of an award of benefits. The Commissioner's "final decision" in this case will be vacated.

An appropriate order will issue.

Mark R. Hornak
United States District Judge

Dated:   July 31, 2013
cc:      All counsel of record

---

[3] In light of this conclusion, the Court need not address Plaintiff's arguments that the VE's testimony could not be relied upon in for the separate reason that it conflicted with the DOT.